UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

TIFFANY M. ROANE,

                Plaintiff,

          *-against-*

MARTIN J. O'MALLEY, Commissioner of
Social Security,

                Defendant.

------------------------------------------------------------x

**DECISION AND ORDER**

22 Civ. 10704 (AEK)

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**[1]

Plaintiff Tiffany M. Roane brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner"), which denied her application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). ECF No. 1. Currently pending before the Court are Plaintiff's motion for summary judgment and the Commissioner's cross-motion for judgment on the pleadings.[2] ECF Nos. 11, 14. For the reasons that follow, Plaintiff's motion (ECF No. 11) is DENIED and the Commissioner's cross-motion (ECF No. 14) is GRANTED.

---

[1] The parties consented to the jurisdiction of the undersigned for all purposes pursuant to 28 U.S.C. § 636(c) on January 19, 2023. ECF No. 9.

[2] The nationwide Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g), along with this District's Standing Order No. 22-mc-00329 (LTS) (ECF No. 3), provide that the parties' submissions presenting appeals of Social Security Administration decisions under 42 U.S.C. § 405(g) for review in federal court will be styled simply as "briefs." Regardless of how Plaintiff styled her motion and how the Commissioner styled his opposition, however, the Court's review of the Commissioner's decision is the same. *See* 42 U.S.C. § 405(g); *Capezza v. O'Malley*, No. 23-cv-01813 (SDA), 2024 WL 642961, at *1 n.2 (S.D.N.Y. Feb. 15, 2024).

# BACKGROUND

## I.    Procedural Background

Plaintiff filed an application for DIB in late August 2020, alleging March 1, 2020 as the onset date of her disability.  AR 79 (noting a filing date of August 25, 2020), 208 (noting a filing date of August 27, 2020).[3]  In her initial filing, Plaintiff claimed she was disabled due to a pinched nerve, disc herniation, bulging discs, and carpal tunnel syndrome ("CTS").  AR 237. The Social Security Administration (the "SSA") denied Plaintiff's claim on February 2, 2021, AR 104-09, and denied her request for reconsideration of that decision on April 28, 2021, AR 111-16.  Following the denial of her request for reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ").  AR 179.  An administrative hearing was held before ALJ Lori Romeo on September 3, 2021, during which Plaintiff was represented by counsel.  AR 26-58.  On December 8, 2021, ALJ Romeo issued a decision finding that Plaintiff was not disabled within the meaning of the Act from the alleged onset date of March 1, 2020 through the date of the decision.  AR 10-20.  Plaintiff subsequently submitted a request for review of ALJ Romeo's decision to the SSA's Appeals Council.  AR 204.  On October 19, 2022 the Appeals Council found that the objections submitted to the ALJ's decision did not provide a basis for changing the decision, and therefore denied the request for review.  AR 1-6.  That denial made ALJ Romeo's December 8, 2021 decision the final decision of the Commissioner. On December 19, 2022, Plaintiff filed the instant lawsuit seeking judicial review of ALJ Romeo's decision.  ECF No. 1

---

[3] Citations to "AR" refer to the certified copy of the administrative record filed by the Commissioner.  ECF No. 10.

## II. Testimonial, Medical, and Vocational Evidence

Plaintiff has provided a summary of the relevant testimonial, medical, and vocational evidence contained in the administrative record. *See* ECF No. 12 ("Pl.'s Mem.") at 4-11. The Commissioner has adopted Plaintiff's summary of the evidence and provided a brief statement of additional evidence that the SSA deems relevant to the Court's analysis. *See* ECF No. 15 ("Def.'s Mem.") at 2-4. Based on an independent and thorough examination of the record, the Court finds that the parties' summaries of the evidence are largely comprehensive and accurate. Accordingly, the Court adopts the summaries and discusses the evidence in the record in more detail to the extent necessary to a determination of the issues raised in this case. *See, e.g.*, *Banks v. Comm'r of Soc. Sec.*, No. 19-cv-929 (AJN) (SDA), 2020 WL 2768800, at *2 (S.D.N.Y. Jan. 16, 2020), *adopted by* 2020 WL 2765686 (S.D.N.Y. May 27, 2020).

## APPLICABLE LEGAL PRINCIPLES

### I. Standard of Review

The scope of review in an appeal from a Social Security disability determination involves two levels of inquiry. First, the court must review the Commissioner's decision to assess whether the Commissioner applied the correct legal standards when deciding that the plaintiff was not disabled. *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). "'Failure to apply the correct legal standards is grounds for reversal.'" *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

Second, the court must evaluate whether the Commissioner's decision was supported by substantial evidence. *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 106 (quotation marks omitted). The "substantial evidence" standard of review is "very deferential," and it is not the function of the reviewing

court "to determine *de novo* whether a plaintiff is disabled." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (quotation marks omitted). To determine whether a decision by the Commissioner is supported by substantial evidence, courts must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (quotation marks omitted). "The substantial evidence standard means once an ALJ finds facts, [courts] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Id.* (quotation marks omitted) (emphasis in original). "'If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.'" *Id.* (quoting *McIntyre v. Colvin*, 758 F3d 146, 149 (2d Cir. 2014)).

## II.    Determining Disability

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled under the Act if he or she suffers from an impairment which is "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.*

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must follow in determining whether a particular claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4). The Commissioner first considers whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i), (b). If the claimant is engaged in substantial gainful activity, then the Commissioner will find that the claimant is not disabled; if

the claimant is not engaged in substantial gainful activity, then the Commissioner proceeds to the second step, at which the Commissioner considers the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant suffers from any severe impairment, the Commissioner at step three must decide if the impairment meets or equals a listed impairment; listed impairments are presumed severe enough to render an individual disabled, and the criteria for each listing are found in Appendix 1 to Part 404, Subpart P of the SSA regulations. 20 C.F.R § 404.1520(a)(4)(iii), (d).

If the claimant's impairments do not satisfy the criteria of a listed impairment at step three, the Commissioner must then determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). A claimant's RFC represents "the most [he or she] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). After determining the claimant's RFC, the Commissioner proceeds to the fourth step to determine whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)-(f). If it is found that the claimant cannot perform his or her past relevant work, the Commissioner proceeds to step five to consider the claimant's RFC, age, education, and work experience to determine whether he or she can adjust to other work. 20 C.F.R. § 404.1520(a)(4)(v), (g). To support a finding that the claimant is disabled, there must be no other work existing in significant numbers in the national economy that the claimant, in light of his or her RFC and vocational factors, is capable of performing. 20 C.F.R. § 404.1560(c).

The claimant bears the burden of proof on the first four steps of this analysis. *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998). If the ALJ concludes at an early step of the

analysis that the claimant is not disabled, he or she need not proceed with the remaining steps.

*Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 2000).  If the fifth step is necessary, the burden shifts

to the Commissioner to show that the claimant is capable of performing other work.  *DeChirico*,

134 F.3d at 1180.

## DISCUSSION

Plaintiff seeks to have the Commissioner's decision reversed and have the matter

remanded to the SSA for further administrative proceedings.  *See* Pl.'s Mem. at 22-23.  She

contends that ALJ Romeo (i) failed to identify and consider all of her severe impairments; (ii)

used improperly vague language in evaluating Plaintiff's capabilities as part of the RFC

determination; (iii) failed to include certain necessary limitations as part of the RFC assessment;

(iv) failed to comply with Social Security Ruling ("SSR") 96-8p in evaluating Plaintiff's RFC;

and (v) improperly evaluated the medical opinion evidence.  Pl.'s Mem. at 12-22.  The

Commissioner maintains that the final decision denying DIB should be affirmed because it is

based upon application of the correct legal standards and is supported by substantial evidence.

Def.'s Mem. at 4-23.

For the reasons set forth below, the Court finds that the ALJ applied the correct legal

standards and that her decision was supported by substantial evidence.

## I.    The ALJ's Decision

ALJ Romeo applied the five-step sequential analysis described above and issued a

decision finding that Plaintiff was not disabled from her alleged disability onset date of March 1,

2020, through the date of decision, December 8, 2021.  AR 10-20.  First, the ALJ found that

Plaintiff had not engaged in substantial gainful activity since March 1, 2020.  AR 12.  Second,

ALJ Romeo determined that Plaintiff had the following severe impairments:

> cervical derangement with myofascitis with probable underlying
> radiculopathy with focal posterior disc herniation; lumbosacral
> derangement with myofascitis with probable underlying radiculopathy
> with focal disc herniation L5, S1; disc bulge and posterior disc herniation
> and facet joint hypertrophy L4-L5; end plate hypertrophy and disc bulge
> impinged upon ventral thecal sac at L3-L4; and obesity . . . .

*Id.*  The ALJ found that Plaintiff's possible CTS was non-severe, because the "objective medical evidence does not support a finding that [the condition] more than minimally affects [Plaintiff's] ability to perform basic work activities . . . ."  *Id.*

Third, ALJ Romeo concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 13.  The ALJ considered Listing 1.15, which addresses "disorders of the skeletal spine resulting in a compromise of the nerve root," and found that while Plaintiff regularly reported pain, muscle weakness, and sensory issues, and physical examination did indicate possible nerve root involvement, "compromise was not demonstrated on imaging," and Plaintiff did not require the use of an assistive device.  *Id.*

According to ALJ Romeo, Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[4] with the ability to sit for six hours in an eight hour workday and stand and walk for two hours in an eight hour workday with normal breaks, and the ability to push and pull at the sedentary weight limit.  AR 14.  The ALJ also assessed additional limitations:

> [Plaintiff] can only reach at desk level and should not reach overhead
> (due to her neck impairment).  [Plaintiff] can occasionally climb stairs

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

> and ramps but should not climb ladders or scaffolds. [Plaintiff] can
> occasionally stoop. [Plaintiff] should not kneel, crouch, and crawl.
> [Plaintiff] can use her hands to finger, feel, grip and grasp throughout the
> day with normal breaks.

*Id.*

In determining Plaintiff's RFC, the ALJ evaluated Plaintiff's symptoms by applying the two-step framework described in 20 C.F.R. § 404.1529 and SSR 16-3p,[5] eventually concluding that while Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," limitations greater than those accounted for in the ALJ's RFC determination "are not supported by the evidence." AR 14, 17-18. The ALJ provided a detailed summary of the evidence in the record, including Plaintiff's statements about her symptoms and activities of daily living, as well as the medical treatment records. AR 14-17. Among other things, ALJ Romeo also concluded that while Plaintiff has a neck impairment and that there is evidence of some pain in her neck, there was not evidence in the record to support a finding that Plaintiff was unable to rotate her neck at all. AR 20.

ALJ Romeo also considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1520c. AR 14, 18-19. Of particular relevance to the issues raised in the parties' briefing was the ALJ's evaluation of the opinion evidence provided by a consultative examiner,

---

[5] ALJ Romeo specified that the first step in the process is to determine "whether there is an underlying medically determinable physical or mental impairment(s)—*i.e.*, an impairment(s) that medically acceptable clinical or laboratory diagnostic techniques can show—that a person could reasonably expect to produce the claimant's pain or other symptoms." AR 14. Second, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown," the ALJ "must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." AR 14. "[W]henever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, [the ALJ] must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." AR 14.

Dr. Ram Ravi, and by two state agency medical consultants who reviewed Plaintiff's records.

Dr. Ravi examined Plaintiff in January 2021 and determined that Plaintiff had "[n]o limitations

sitting and standing," but "[m]oderate to marked limitations to bending, overhead reaching

bilaterally, pushing, pulling, lifting, and carrying." AR 18, 373-76. ALJ Romeo noted that this

opinion was from a doctor familiar with SSA functionality, and that the examination findings by

Dr. Ravi were supported by other evidence in the record showing that Plaintiff's conditions

would impose limitations; she also observed, however, that the opinion used vague language.

AR 18. Ultimately, ALJ Romeo found Dr. Ravi's opinion persuasive "to the extent it supported

[that Plaintiff's] conditions would impose restrictions, yet not as to any specific limitations due

to the vague language used in the assessment." AR 18.

State agency consultants Drs. R. Abueg and H. Miller did not examine Plaintiff, but both

reviewed the record as it appeared on the date their opinions were rendered—January 28, 2021

for Dr. Abueg in connection with Plaintiff's initial disability determination, and April 23, 2021

for Dr. Miller in connection with Plaintiff's application for reconsideration of the initial

determination. AR 18, 69-78, 81-95. ALJ Romeo explained that Dr. Abueg opined that Plaintiff

could sit or stand/walk for approximately six hours in an eight-hour workday, and that she had

no restrictions in her ability to push or pull up to the point of what she could lift or carry. AR 18,

75. As ALJ Romeo noted, Dr. Miller also opined that Plaintiff could sit or stand/walk for about

six hours in an eight-hour workday, was unlimited in her ability to push and pull up to the point

of what she could lift or carry, and could occasionally stoop. AR 18, 90-91. According to ALJ

Romeo, while these opinions were consistent with a light exertional level, "additional evidence

and claimant's testimony support greater limitations," AR 18, and the final RFC determination

for Plaintiff was therefore more restrictive in various ways.

At the fourth step, ALJ Romeo found that Plaintiff was unable to perform any past relevant work.  AR 19.

At the fifth step, the ALJ noted that Plaintiff was 35 years old as of the alleged onset date of her disability, which fits within the definition of a "younger individual age 18-44"; that she had at least a high school education; and that transferability of job skills was not an issue material to the determination of disability here.  *Id.*  ALJ Romeo explained that if Plaintiff had the RFC to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28.  AR 20.  But because ALJ Romeo found that Plaintiff's "ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations," ALJ Romeo asked vocational expert ("VE") Marian R. Marracco whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC in order to "determine the extent to which these limitations erode the unskilled sedentary occupational base."  AR 20, 52.  ALJ Romeo noted that the VE testified at the hearing that given all of the factors, Plaintiff could perform representative occupations such as clerk customer service (192,360 jobs nationally); order clerk (215,390 jobs nationally); and document preparer (44,068 jobs nationally).  AR 20, 53.  The ALJ further explained that the VE noted that some of the RFC limitations, such as the direction of reaching, are not specifically noted in the Dictionary of Occupational Titles, but that these jobs were not precluded based on the VE's knowledge and experience.  AR 20, 54.  Based on the VE's testimony, ALJ Romeo concluded that considering Plaintiff's age, education, work experience, and RFC, Plaintiff was "capable of making successful adjustment to other work that exists in significant numbers in the national economy."  AR 20.  For all of these reasons, the ALJ

determined that Plaintiff was not disabled from March 1, 2020, the alleged onset date of her

disability, through December 8, 2021, the date of the decision.  *Id.*

## II.    The ALJ's Assessment of Plaintiff's Severe Impairments

      Even though ALJ Romeo identified Plaintiff as having multiple severe impairments and

thus proceeded to the remainder of the five-step sequential analysis, Plaintiff nevertheless

contends that the ALJ erred at step two by failing to identify certain of Plaintiff's alleged

impairments as severe.  *See* Pl.'s Mem. at 12; AR 12.  Specifically, Plaintiff maintains that her

alleged left hand impairment, hip impairment, and bilateral knee impairments should have been

considered severe impairments.  Pl.'s Mem. at 12.

      At step two of the sequential analysis, the burden is on the plaintiff to show that an

impairment is severe.  *See Camacho v. Kijakazi*, No. 21-cv-5811 (JW), 2022 WL 4585420, at *8

(S.D.N.Y. Sept. 29, 2022) (quoting *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003)).  An

impairment or combination of impairments is severe if it significantly limits the claimant's

physical or mental ability to perform basic work activities.  *See id.* (citing 20 C.F.R. §

404.1520(c)).  In contrast, "[a]n impairment or combination of impairments is not severe if it

does not significantly limit [the claimant's] physical or mental ability to do basic work

activities." 20 C.F.R. § 404.1522.  "A step two error is not reversible and does not necessitate

remand where the record is devoid of evidence that the allegedly omitted impairments were

severe." *Sylvia A. v. Comm'r of Soc. Sec.*, No. 21-cv-885 (VEC) (GRJ), 2022 WL 3566910, at

*6 (S.D.N.Y. June 10, 2022), *adopted sub nom. by Alvarez v. Comm'r of Soc. Sec.*, 2022 WL

2751860 (S.D.N.Y. July 14, 2022).  To the extent an ALJ mistakenly determines that a particular

impairment is not severe, a "specialized variant of harmless-error analysis" may apply.  *Girao v.

Kijakazi*, No. 22-cv-1419 (JLC), 2023 WL 5312064, at *13 (S.D.N.Y. 2023).  Specifically,

"[w]hen an [ALJ] identifies some severe impairments at step two, and then proceeds through the

sequential evaluation on the basis of the combined effects of all impairments, including those erroneously found to be non-severe, an error in failing to identify all severe impairments at step two is harmless." *Id.*

### A.    Alleged Left Hand Impairment

ALJ Romeo did not err by not finding that Plaintiff had a severe impairment of her left hand.  Even though Plaintiff alleged CTS as a basis for her disability, AR 237, there is no objective medical evidence in the record to support such a diagnosis.  As ALJ Romeo acknowledged, Plaintiff was diagnosed with "possible [CTS]" at an appointment in September 2017, AR 13, 690-91, but there is no evidence in the record of further treatment for CTS, and in his report following his consultative examination of Plaintiff, Dr. Ravi noted that Plaintiff's hand and finger dexterity were intact and that she had full grip strength in both hands, AR 375.  Based on this limited record, it was reasonable for ALJ Romeo to conclude that "the objective medical evidence does not support a finding that [Plaintiff's] possible [CTS] more than minimally affects [Plaintiff's] ability to perform basic work activities and is non-severe."  AR 13.

Other evidence regarding a potential left hand impairment is also minimal.  In her brief, Plaintiff highlights a July 14, 2021 record from NYU Langone Health System, where Plaintiff complained of "left hand numbness and tingling."  Pl.'s Mem. at 13; AR 659.  At that visit, however, Plaintiff's motor skills were intact and her "digital motion" was described as "full," and there was no objective diagnostic testing done—the provider was unable to perform an objective nerve exam because Plaintiff was unable to comply with the testing.  AR 662.  Plaintiff did check a box in her October 5, 2020 Function Report indicating that her condition affected "using hands," but this came with no further elaboration.  AR 260.  Neither party has pointed to any other medical records where Plaintiff complained of any issues involving her left hand.

At most, there is some limited evidence of Plaintiff having subjective complaints regarding the use of her left hand, but this, without more, is not enough for a condition to be classified as severe.  *See* 20 C.F.R. § 404.1521 ("a physical or mental impairment must be established by objective medical evidence from an acceptable medical source.  We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).").  Accordingly, given the absence of objective medical evidence in the record, ALJ Romeo did not err by concluding that Plaintiff did not have a severe impairment associated with her left hand.

### B.    Alleged Hip Impairment

Plaintiff next contends that ALJ Romeo erred by failing to find that she had a severe hip impairment.  The Court disagrees.  Notably, Plaintiff did not allege a hip impairment at the time she applied for benefits in August 2020, AR 237, nor did she list her hip as a source of pain when she testified at the administrative hearing, AR 35-36.  In support of this argument Plaintiff points to the July 2020 examination notes of Dr. Colin Clarke which state, among other things, that "the left hip is tender to palpitation," and which include a diagnosis of left hip contusion.  Pl.'s Mem. at 14; AR 512.  Plaintiff also asserts that Dr. Ravi's finding that Plaintiff had moderate to marked limitations for bending requires a finding of severe hip impairment, Pl.'s Mem. at 14, though Plaintiff does not explain why such a finding by Dr. Ravi purportedly necessitates such a conclusion regarding Plaintiff's hip.

ALJ Romeo made reference to the January 29, 2020 left hip MRI discussed in Dr. Clarke's examination notes. AR 15, 359. While the MRI revealed "acetabular joint effusion,"[6] it also showed "intact acetabular root articular cartilage and subchondral bone [with] no fracture or osteonecrosis." AR 359. The same MRI report also noted that "the left femoral head and neck junction demonstrates normal spherical contour," "the sacroiliac joints are normal," "the superior and inferior pubic rami are normal," and "[t]he adductor and abductor muscles of the hip are normal," none of which is consistent with a severe hip impairment. *Id.* Again, Plaintiff has failed to demonstrate through objective medical evidence in the record that she suffered from a severe hip impairment that should have been recognized by the ALJ at step two of the sequential analysis, and ALJ Romeo therefore did not err by declining to find a severe hip impairment.

### C.   Alleged Bilateral Knee Impairment

The record reflects somewhat more consistent reporting by Plaintiff of pain in both of her knees. In physical therapy notes beginning in March 2021, Plaintiff complained that "she has had [bilateral] knee pain for many years," and that this "knee pain has been progressively worsening[,] with significant worsening about 2 years ago." AR 378. Certain objective tests returned positive findings for knee conditions, and the therapist's initial assessment was that Plaintiff's condition "seems to limit her ability to fully extend the knees, which affects her gait." AR 379. Plaintiff continued to report knee pain at physical therapy appointments in April and May 2021 (though with some improvement over time), AR 560, 566, 571, 575, 579, 582, 585,

---

[6] "Joint effusion (a swollen joint) happens when extra fluids flood the tissues around your joint. The fluids make your joint look larger and puffier compared to your other joints." *Joint Effusion (Swollen Joint)*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/symptoms/21908-joint-effusion [https://perma.cc/KY7F-Q45M]

588, and she did reference pain her knees during her hearing testimony, AR 36.  But even if this evidence could be considered sufficient to warrant a finding that Plaintiff's bilateral knee pain amounted to a severe impairment, any error by ALJ Romeo is harmless, because the ALJ factored in Plaintiff's "knee pain" in formulating the RFC.

Specifically, ALJ Romeo stated that Plaintiff's "orthopedic impairments, *knee pain* and obesity" restrict Plaintiff to "sedentary work level with limits to stooping and climbing stairs." AR 17-18 (emphasis added).  While Plaintiff's orthopedic impairments and obesity were identified as severe conditions at step two, the ALJ plainly determined that Plaintiff's "knee pain" was entitled to the same level of consideration in the RFC analysis.  Significantly, the RFC also includes limitations on climbing ramps, ladders, and scaffolds, and specifies that Plaintiff should not "kneel, crouch, or crawl," AR 14, all of which are accommodations that address each of the three categories of conditions specified by the ALJ.  Given that ALJ Romeo explicitly accounted for Plaintiff's knee pain in articulating her RFC assessment, the ALJ's failure to include a knee condition in the list of Plaintiff's severe impairments at step two is no more than harmless error.  *See Albizu v. Berryhill*, 335 F. Supp. 3d 355, 377 (E.D.N.Y. 2018) ("Where an ALJ fails to note a particular impairment at step two, if the ALJ finds other severe impairments and considers the omitted impairment in the subsequent steps, 'any error was harmless.'" (quoting *O'Connell v. Colvin*, 558 F. App'x 63, 65 (2d Cir. 2014))).  Indeed, in *O'Connell*, the claimant argued that the ALJ erred at step two by failing to determine that he suffered from a severe right knee impairment, but the panel found that in subsequent steps of the sequential analysis, the ALJ "specifically considered" the right knee dysfunction.  *O'Connell*, 558 F. App'x at 65.  Similarly here, it is clear from ALJ Romeo's decision that she "considered all symptoms

and the combination of impairments in making [her] [RFC] determination." *Id.* (cleaned up). Accordingly, any error here was harmless, and remand is not warranted on this basis.

## III.   The ALJ's RFC Determination

Plaintiff challenges ALJ Romeo's RFC determination on the basis that it contains vague language related to the function-by function assessment, does not include certain necessary limitations, and fails to comply with the requirements of SSR 96-8p. *See* Pl.'s Mem. at 12-20, 22.

ALJ Romeo's RFC analysis is supported by substantial evidence. It is well settled that "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo* 31 F.4th at 78. Although an ALJ's RFC determination "may not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, he [or she] [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). Ultimately, it is the plaintiff's burden to demonstrate that the RFC should have been more restrictive than the RFC assessed by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (citing 42 U.S.C. § 423(d)(5)).

### A.   The ALJ's Evaluation of Plaintiff's Ability to Use Her Hands

Plaintiff asserts that ALJ Romeo used vague language in her function-by-function assessment and therefore failed to comply with SSR 96-8p; this argument focuses exclusively on Plaintiff's ability to use her hands. Pl.'s Mem. at 15. According to Plaintiff, while ALJ Romeo "stated in his [*sic*] function-by-function assessment that Ms. Roane can finger, feel, grip and grasp throughout the day with normal breaks," she failed to "adequately define postural movement in work related terms such as frequently, continuously, or occasionally." Pl.'s Mem. at 15.

As an initial matter, Plaintiff cites no legal authority for the proposition that the failure to use the terms "frequently, continuously, or occasionally" amounts to an error requiring remand. The language in the ALJ's RFC assessment is unambiguous in both the types of tasks and duration in which Plaintiff can use her hands, and this determination is supported by substantial evidence.  Specifically, ALJ Romeo found that Plaintiff could "use her hands to finger, feel, grip, and grasp throughout the day with normal breaks."  AR 14.  This conclusion is supported by the consultative examination opinion of Dr. Ravi, which stated that Plaintiff's "[h]and and finger dexterity are intact" and that her "[g]rip strength is 5/5 bilaterally."  AR 375.  Moreover, state agency consultants Dr. Abueg and Dr. Miller did not assess any limitations on fingering, feeling, gripping, or grasping based on their review of the medical evidence, even though they acknowledged that the record did contain subjective complaints by Plaintiff of hand and wrist pain.  AR 69-78, 81-95.  The ALJ's findings are also consistent with Plaintiff's testimony at the hearing, where she stated that she could perform tasks like laundry and cooking meals, AR 35, and her statements in her October 2020 Function Report, where she described her daily activities as including taking care of her son, cleaning, making food, and shopping if needed, AR 256.  For all of these reasons, the portion of the ALJ's RFC determination that relates to Plaintiff's ability to use her hands is supported by substantial evidence and does not provide a basis for remand.

### B.    The ALJ's Evaluation of Plaintiff's Limitations

Plaintiff next contends that ALJ Romeo failed to include necessary limitations in the assessment of her RFC.  Pl.'s Mem. at 16.  She asserts that ALJ Romeo should have required additional restrictions for (i) a sit/stand option; (ii) only occasionally being able to flex or rotate the neck; (iii) reaching in all directions, and handling, fingering, and feeling with the left hand; and (iv) bending or stooping.  Pl.'s Mem. at 16-20.

### 1.      Alternate Sitting and Standing

According to Plaintiff, ALJ Romeo erred in failing to include a sit/stand option in her RFC.  Pl.'s Mem. at 16.  Plaintiff claimed in her October 2020 Function Report that it was hard for her to stand and sit for too long, AR 255, reported during a physical therapy evaluation that she experienced "pain during bending, heavy lifting + prolonged standing," AR 426, and complained of "intolerance to prolonged sitting/standing positions," AR 666.  In addition, at the hearing, Plaintiff stated that she could sit only for ten to fifteen minutes and stand for about ten minutes before getting uncomfortable.  AR 37.  Yet Plaintiff has not pointed to any medical opinion in the record that recommends a sit/stand option for her.  To the contrary, Dr. Ravi—who had the opportunity to examine Plaintiff—noted "no limitations sitting and standing" based on his examination, AR 376, and Dr. Abueg and Dr. Miller both stated, based on their reviews of the medical records, that Plaintiff could sit with normal breaks for six hours in an eight-hour workday and stand and/or walk with normal breaks for six hours in an eight-hour day.  AR 75, 90-91.

Although the ALJ did not include a sit/stand option, she did include certain limitations related to standing.  Notably, the RFC assessed by the ALJ—that Plaintiff "can sit six hours in an eight hour workday and stand and walk two hours in an eight hour workday with normal breaks," AR 14— with further limitations imposed to limit any climbing, contains significant limitations regarding Plaintiff's ability to stand, and is more restrictive with respect to standing than any of these three medical opinions, *id*.  Plaintiff does not specify how the medical record as a whole supports greater limitations than what the ALJ included in the RFC, let alone the supposed need for a sit/stand option.  The burden is on the Plaintiff to point to medical evidence in the record to support the need for a sit/stand option, and she has not satisfied this burden.  *See Mancuso v. Kijakazi*, No. 22-cv-5633 (KMK) (AEK), 2023 WL 6520294, at *11 (S.D.N.Y. Aug. 15, 2023),

*adopted by* 2023 WL 6311289 (S.D.N.Y. Sep. 28, 2023); *German v. Comm'r of Soc. Sec.*, No. 19-cv-3328 (AT) (SDA), 2020 WL 5899521, at *9 (S.D.N.Y. May 27, 2020) ("the ALJ did not ignore evidence of a sit/stand limitation, as the medical evidence does not indicate that Plaintiff was so limited"), *adopted by* 2020 WL 3959187 (S.D.N.Y. July 13, 2020).  Taken as a whole, the ALJ's RFC determination with respect to Plaintiff's ability to sit and stand is supported by substantial evidence, and the ALJ did not err by not including a sit/stand option in Plaintiff's RFC.

### 2.        Occasionally Flexing and/or Rotating the Neck

The entirety of Plaintiff's argument regarding the purported need for additional restrictions due to neck pain rests on Plaintiff's subjective contentions regarding her neck condition.  Plaintiff testified at the hearing that she had pain in the back of her neck and had problems turning her neck "both ways," and points to various other statements in the medical record based on her own subjective complaints.  Pl.'s Mem. at 17-18; AR 35, 42, 255, 341, 368, 666.  The ALJ's RFC determination did recognize some degree of neck-related limitation— Plaintiff was limited to reaching only to desk level specifically "due to her neck impairment." AR 14.  But ALJ Romeo reasonably concluded that the evidence in the record did not support a finding Plaintiff was unable to rotate her neck at all, or that greater limitations were required. AR 18, 20.  This assessment is supported by substantial evidence.  Even though Dr. Ravi did conclude that Plaintiff had moderate to marked limitations in several areas of job-related functioning, he did not determine that any limitations were required for Plaintiff's ability or inability to move her neck.  AR 376.  Dr. Abueg and Dr. Miller also did not assess any neck-related limitations based on their review of the entire medical record.  Plaintiff's subjective complaints of neck paid are not sufficient to carry her burden of establishing a more restrictive

RFC than that determined by the ALJ.  Accordingly, there was no error in ALJ Romeo's assessment of Plaintiff's neck-related limitations.

### 3.    Reaching in All Directions, and Handling, Fingering, and Feeling with the Left Hand

Plaintiff's contention as to a purported failure to include an additional reaching limitation, or limitations on handling, fingering, and feeling with the left hand, is unavailing.  As a threshold matter, Plaintiff has not even offered any substantive argument as to this point—this section of Plaintiff's brief consists of one sentence regarding Plaintiff's subjective complaints of pain in her left hand (with a citation to the entire transcript of the administrative hearing), and two sentences reciting the generic standards set forth in SSR 16-3p.  *See* Pl.'s Mem. at 18-19. The failure to develop this argument is a sufficient ground to reject it.  *See Hilton v. Kijakazi*, 602 F. Supp. 3d 558, 570 (S.D.N.Y. 2022) (collecting cases).

And in any event, the suggestion that further limitations should have been assessed in this area is not supported by the record.  As noted in Sections II.A and III.A, *supra*, ALJ Romeo's conclusion that Plaintiff had no severe left hand impairment was supported by substantial evidence—particularly the consultative examination opinion from Dr. Ravi, AR 375-76—and therefore there was no basis to conclude that additional limitations on handling, fingering, and feeling with the left hand were required.  Moreover, ALJ Romeo did include a reaching limitation in her RFC assessment, stating that Plaintiff "can only reach at desk level and should not reach over head (due to her neck impairment)."  AR 14.  Reaching is a distinct issue from handling, fingering, and feeling, and Plaintiff has not pointed to any additional evidence in the record to suggest that a further limitation on reaching related to her left hand was necessary. Notably, Dr. Abueg, Dr. Miller, and Dr. Ravi did not assess any need for reaching limitations at all.  *See* AR 69-78, 81-95, 372-77.  Accordingly, this portion of the ALJ's RFC assessment is

supported by substantial evidence, and Plaintiff has not satisfied her burden of coming forward with sufficient evidence to show that additional limitations were warranted.

### 4.    Bending and Stooping

Finally, Plaintiff argues that the ALJ failed to "offer an explanation of the claimant's ability to bend and to properly evaluate the claimant's inability to stoop."  Pl.'s Mem. at 20. Again, the Court disagrees.  While ALJ Romeo did not specifically use the term "bending" as part of the RFC analysis, she did specify limitations for stooping, and it is clear that the restrictions she imposed for stooping (occasional only), and kneeling, crouching, and crawling (none at all), were designed to address Plaintiff's orthopedic and knee-related impairments.  *See* AR 14.  SSR 85-15 states that "[*s*]*tooping, kneeling, crouching, and crawling* are progressively more strenuous forms of bending parts of the body, with crawling as a form of locomotion involving bending."  SSR 85-15, 1985 WL 56857 (emphasis in original).  By assessing limitations for each of these "more strenuous forms of bending," ALJ Romeo adequately provided for Plaintiff's impairment in this area.  ALJ Romeo considered the evidence in the record as to Plaintiff's ability to bend throughout her decision.  Plaintiff alleged difficulties bending in her October 2020 Function Report, AR 260, and reported her pain worsened with bending at her March 2020 physical therapy reevaluation, AR 426.  ALJ Romeo noted that Dr. Ravi found "moderate to marked limitations to bending," Dr. Abueg found that Plaintiff had no postural limitations, AR 75, and Dr. Miller found that Plaintiff could stoop occasionally, and kneel, crouch and crawl with no limitations, AR 91.  Thus, while the ALJ did not use the specific terms "bend" or "bending," she considered all of the relevant evidence in assessing Plaintiff's ability to engage in the various activities involving bending articulated in SSR 85-15.  As to the question of bending and stooping, the ALJ's RFC analysis is supported by substantial evidence,

Plaintiff did not provide evidence to support greater limitations than those imposed by ALJ Romeo, and therefore remand is not warranted based on this portion of the RFC determination.

### C.   The ALJ Did Not Fail to Comply with the Requirements of SSR 96-8p in Assessing Plaintiff's RFC

Finally, Plaintiff asserts that ALJ Romeo failed to comply with SSR 96-8p in making her RFC determination.  Pl.'s Mem. at 22.  Plaintiff, however, does not articulate any substantive argument in support of this point, or cite a single instance where a Court has remanded a case for further proceedings based on an alleged failure to follow the broad instructions of SSR 96-8p. Instead, Plaintiff simply quotes from SSR 96-8p and states, in wholly conclusory fashion, that ALJ Romeo "did not assess the Plaintiff's capacity to perform physical functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level," as required by SSR 96-8p.[7]  *Id.*  The Court disagrees.  As discussed throughout this Decision and Order, ALJ Romeo's RFC assessment was based on a thorough review of the medical evidence in the record and the medical opinion evidence offered by various physicians, and her determinations as to which limitations to include are supported by substantial evidence.  *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) ("Where an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, . . . remand is not necessary merely because an explicit function-by-function analysis was not performed.").  There is no basis here to conclude

---

[7] This "argument" makes especially little sense in this case, where ALJ Romeo already assessed Plaintiff as only being able to perform work at the sedentary level—the least rigorous of all exertional categories recognized by the SSA, *see Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000)—and assessed even further restrictions even within the sedentary category.

that the ALJ failed to comply with SSR 96-8p, and this contention does not provide a ground for
remand.

## IV.     The ALJ's Consideration of the Medical Opinion Evidence

Plaintiff maintains that ALJ Romeo failed to properly evaluate the medical opinion
evidence in the record in accordance with 20 C.F.R. § 404.1520c.  Pl.'s Mem. at 21.
Specifically, in relation to the opinions of Drs. Abueg and Miller, Plaintiff contends that ALJ
Romeo failed "to state if he [*sic*] found these opinions persuasive or unpersuasive and did not
state how he [*sic*] consider this opinion in his function-by-function assessment."  *Id.*

### A.     Legal Standard for Evaluating Medical Opinion Evidence

Because Plaintiff filed her application for DIB after March 27, 2017, her claims are
governed by the SSA's current regulations concerning the consideration of medical opinions.
*See* 20 C.F.R. § 404.1520c.  "Under the new regulations, a treating doctor's opinion is no longer
entitled to a presumption of controlling weight."  *Knief v. Comm'r of Soc. Sec.*, No. 20-cv-6242
(PED), 2021 WL 5449728, at *6 (S.D.N.Y. Nov. 22, 2021) (quotation marks omitted).  Rather,
an ALJ will neither defer, nor give any specific evidentiary weight, to any medical opinion.  20
C.F.R. § 404.1520c(a); *Victor B. v. Comm'r of Soc. Sec.*, No. 20-cv-1154 (FPG), 2021 WL
3667200, at *2 (W.D.N.Y. Aug. 18, 2021) ("[T]he new regulations eliminate the perceived
hierarchy of medical sources, deference to specific medical opinions, and assigning weight to a
medical opinion.") (quotation marks omitted).  Instead, an ALJ must evaluate the persuasiveness
of all medical opinions in the record based on five factors: (1) supportability; (2) consistency; (3)
the medical source's relationship with the claimant; (4) specialization; and (5) other factors that
tend to support or contradict the medical opinion.  20 C.F.R. §§ 404.1520c(c)(1)-(5).
Supportability and consistency are considered the most important factors in evaluating a medical
opinion.  20 C.F.R. § 404.1520c(b)(2); *see Knief*, 2021 WL 5449728, at *6.  With respect to

supportability, "[t]he more relevant the objective medical evidence and supporting explanations

presented by a medical source are to support his or her medical opinion(s) or prior administrative

medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical

finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  With respect to consistency, "[t]he more

consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence

from other medical sources and nonmedical sources in the claim, the more persuasive the

medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §

404.1520c(c)(2).  As part of his or her decision, the ALJ must explain how the factors of

supportability and consistency were considered.  20 C.F.R. § 404.1520c(b)(2); *see Knief*, 2021

WL 5449728, at *6.  In general, the ALJ may, but is not required to, explain how the other

factors were considered.

### B.       The ALJ Properly Evaluated the Medical Opinion Evidence

ALJ Romeo did not err in her evaluation of the medical opinions of the state agency

consultants, Dr. Abueg and Dr. Miller.  "[W]hen supported by evidence in the record, the

opinion of a nonexamining physician can also constitute substantial evidence."  *Rose o/b/o*

*X.G.T.A. v. Berryhill*, No. 18-cv-509 (LGS) (SN), 2019 WL 2453352, at *3 (S.D.N.Y. Feb. 4,

2019), *adopted by* 2019 WL 2498279 (S.D.N.Y. June 17, 2019).

Neither Dr. Abueg nor Dr. Miller personally examined Plaintiff, but both had the

opportunity to review the record prior to rendering their opinions, and each of the opinions

included specific functional limitations.  AR 75-76, 90-91.  Dr. Abueg opined that in an eight-

hour workday, Plaintiff could occasionally lift and/or carry up to 20 pounds; frequently lift

and/or carry up to 10 pounds; and stand, walk, or sit for six hours.  AR 75.  He further opined

that Plaintiff had no limitations on pushing or pulling up to what she could lift or carry, and had

no postural or manipulative limitations.  *Id.*  Dr. Miller offered the same opinion, except with the

additional postural limitation of only occasional stooping.  AR 90-91.  While ALJ Romeo did not

state whether she found these opinions persuasive or unpersuasive using those terms, it is clear

from the ALJ's decision that she relied on the opinions, except to the extent that "additional

evidence received at the hearing level" and "claimant's testimony" supported greater limitations.

AR 18.

These opinions are supported by the opinion of Dr. Ravi, who also concluded, after

examining Plaintiff, that she had "[n]o limitations sitting and standing."  AR 376.  That said, Dr.

Ravi noted that Plaintiff did have moderate to marked limitations in bending, overhead reaching,

pushing, pulling, lifting, and carrying, *id.*, which was part of the additional evidence that ALJ

Romeo determined required the imposition of a greater degree of limitation in Plaintiff's RFC.

AR 14.

Even if an ALJ does not expressly mention the supportability and consistency factors in

his or her evaluation of particular medical opinions, the ALJ has not committed error if the

decision reflects that he or she meaningfully considered those factors.  *See Tipograph v. Comm'r*

*of Soc. Sec.*, No. 20-cv-9136 (MKV) (VF), 2022 WL 6564030, at *14 (S.D.N.Y. July 29, 2022),

*adopted by* 22 WL 4547407 (S.D.N.Y. Sept. 29, 2022).  While ALJ Romeo did not explicitly

state the degree to which she was persuaded by Dr. Abueg and Dr. Miller's opinions, it is clear

from her review and discussion of the medical opinions as a whole that she was at least partially

persuaded by these opinions.  AR 18.  And even though ALJ Romeo did not specifically describe

the opinions as being supported by the medical record, she acknowledged their engagement with

the record as a whole, noting that both Dr. Abueg and Dr. Miller "had an opportunity to review

the record as it appeared on the date [their] opinion[s] [were] made," and that both "reviewed the

record and provided detailed [RFC] assessments."  AR 18.  In both opinions, Dr. Abueg and Dr.

Miller listed the record evidence that they reviewed, and summarized some of that evidence in their RFC discussions, reflecting their detailed consideration of the medical evidence.  AR 70-71, 76 (Abueg), 83-87, 88, 92 (Miller).  Meanwhile, ALJ Romeo's decision also implicitly reflected a recognition that the opinions of the state agency consultants were not entirely consistent with the record that was before her, as she made clear that additional evidence and Plaintiff's hearing testimony supported greater limitations.  AR 18.

Additionally, it was not an error for ALJ Romeo to include some of Dr. Abueg and Dr. Miller's conclusions in her RFC, while not adopting their opinions in their entirety.  "[A]n ALJ is not required to take the opinion of an opining physician wholesale and can rely on parts of it, as long as the RFC is supported by substantial evidence."  *Gutierrez v. Comm'r of Soc. Sec.*, No. 20-cv-10233 (KHP), 2022 WL 2116718, at *12 (S.D.N.Y. June 13, 2022) (citing *Schillo*, 31 F.4th at 78).  In making her RFC findings, it was within ALJ Romeo's discretion to resolve genuine conflicts in the evidence.  *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  It was not an error for ALJ Romeo to rely on certain conclusions in Dr. Abueg and Dr. Miller's opinions, while finding additional limitations were appropriate based on other evidence in the record.  Moreover, Plaintiff also suffered no harm due to ALJ Romeo's deviations from Dr. Abueg and Dr. Miller's opinions—indeed, those departures led the ALJ to assess more restrictive limitations than what Dr. Abueg and Dr. Miller deemed appropriate.

ALJ Romano also referenced the opinions of Dr. Schwartz and Shmuel Kaufman, P.A., Dr. Clarke, and Dr. Shein.  AR 18-19, 381-89, 500-22, 682-89.  While these opinions do note some level of disability, these opinions all relate to Plaintiff's worker's compensation claim, and therefore were formed using different standards than are applied to Social Security cases such as this one.  *See Bezerra v. Comm'r of Soc. Sec.*, No. 20-cv- 4303 (SLC), 2021 WL 4219727, at *10

(S.D.N.Y. Sept. 16, 2021) (noting that the disability determination process utilized by the New York Worker's Compensation Program and the SSA are fundamentally different); 20 C.F.R. § 404.1504.  ALJ Romeo explicitly stated that she found these opinions unpersuasive due to their lack of specific functional limitations, which itself was a result of these different analytical frameworks.  AR 18-19

For all of these reasons, ALJ Romeo did not err in her evaluation of the medical opinion evidence, and taken as a whole, the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (ECF No. 11) is DENIED and the Commissioner's cross-motion for judgment on the pleadings (ECF No. 14) is GRANTED.

The Clerk of Court is respectfully directed to enter judgment in favor of the Commissioner and close this case.

Dated:  March 29, 2024
          White Plains, New York

**SO ORDERED.**

ANDREW E. KRAUSE
United States Magistrate Judge